TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellant,

v.

Leveta BYRD et al., Appellees.

No. 6512.

Court of Civil Appeals of Texas, El Paso.

July 21, 1976.

Rehearing Denied Aug. 18, 1976.

Shafer, Gilliland, Davis, Bunton & McCollum, Inc., Lucius D. Bunton, Odessa, for appellant.

Childs & Bishop Law Offices, Inc., Jerry P. Childs, Odessa, A. R. Archer, Jr., Monahans, Scarborough, Black, Tarpley & Scar-

borough, Frank Scarborough, Abilene, Lawrence L. Fuller, Monahans, Merkin & Gibson, William L. Merkin, Sidney K. Gibson, El Paso, Armendariz & Armendariz, Albert Armendariz, Sr., El Paso, Lawrence L. Barber, Jr., Monahans, Gibson, Ochsner, Adkins, Harlan & Hankins, S. Tom Morris, Amarillo, for appellees.

## OPINION

PRESLAR, Chief Justice.

This is a workmen's compensation case arising out of a motor vehicle collision which occurred when a drilling crew was going from a rig location in New Mexico to their homes in Monahans, Texas. Based on a jury verdict as to certain issues and a finding by the trial Court that as a matter of law the claimants were in the course and scope of their employment, judgment was entered for the claimants. We affirm.

The sole question on appeal is whether the injuries were sustained in the course of employment within the meaning of Sections 1 and 1b of Article 8309, Tex.Rev.Civ.Stat. Ann.

The employees of Marcum Drilling Company were riding in a double-cab pickup driven and owned by their driller, George Lee Wilson. The driller was killed, but his case is not one of those before us. Billy R. Sanderson was killed, and Benito Calderon, Francisco S. Gonzales, and Jose R. Santiago were injured. The cases of these four crewmen were consolidated into this single cause for trial and for appeal. The accident happened on a public highway after the men had completed their tour of duty at the drilling rig and were on their way home. It was stipulated that, immediately prior to the accident, the crew members were on their way home to Monahans and were passengers in the pickup owned and driven by Wilson. The drilling location was approximately 100 miles from Monahans; there was no public transportation to it; it was located in a remote area where there were no living accommodations, so that it was necessary for the drilling crew to get from Monahans to the well site and back each day.

The occasion for the crew riding with the driller was under a plan whereby Marcum Drilling Company paid the driller 12¢ a mile for the round trip from Monahans to the rig location. The driller hired the crew members, and at the time of employing them told them that this transportation would be available; that they could ride with him, but they were not required to. The driller picked the crew members up at their homes each day, and returned them home after the day's work. As a matter of fact, the crew members did ride with the driller each day. At the time of their employment, the drillers are told that they will be paid mileage, that they are to furnish the crew, that they will be driving everyday to and from the well location, and are expected to have the crew there. The Appellant insists that, under this state of facts, the injuries did not occur while these employees were in the course and scope of their employment.

This Court has recently ruled on a similar, if not almost identical, set of facts in the case of *Liberty Mutual Insurance Company v. Raymond E. Chesnut*, our Cause No. 6481, decided July 7, 1976, not yet reported, but found in Vol. 1, Texas Court Reports, page 187, a new publication in its third week of weekly publication. There, as here, there was a plan for getting the crew to the well site in a remote area by the driller being paid 12¢ a mile and his furnishing transportation to his crew. We held the crew to be in the course of their employment when their injuries occurred on a public highway from an automobile collision while being so transported by the driller to the well site. The controlling facts of that case are so identical to the case before us as to be controlling of this case, if, as a matter of law, the crew was in the course of their employment as found by the trial judge.

In the *Chesnut* case, the jury found that the employees were in the course and scope of their employment, and the complaint on appeal was that there was no evidence to support such a finding. Under such assignment of error, our holding was that we

could not say as a matter of law that the injuries did not occur in the course of employment. In the case before us, the jury was unable to agree on the issue, and the Court directed a verdict as to that issue, holding that as a matter of law the injuries occurred in the course of employment. In the *Chesnut* case, we were reviewing a jury finding on the course and scope of employment, and followed the familiar rule that in reviewing "no evidence" points, an appellate Court must consider only the evidence and inferences tending to support the finding. In this review, considerations of the evidence and inferences are to the contrary. Here, we are reviewing a finding by the Court that as a matter of law the men were in the course and scope of their employment.

■ On appeal from a judgment which grants an instructed verdict, the appellate Court is required to review the evidence most favorable to the Appellant, to indulge against the judgment every inference that may be properly drawn from the evidence, and to disregard all conflicting evidence. *Stone v. Lawyers Title Insurance Corporation*, 537 S.W.2d 55 (Tex.Civ.App.—Corpus Christi 1976, no writ), *Seideneck v. Cal Bayreuther Associates*, 451 S.W.2d 752 (Tex. 1970). The test for determining whether or not the instructed verdict should be granted is whether or not reasonable men may differ as to the truth of <u>controlling</u> facts. *Stone v. Lawyers Title Insurance Corporation*, supra, and *City of Fort Worth v. Lee*, 143 Tex. 551, 186 S.W.2d 954 (1945). We underscore "controlling" because in the case before us we are of the opinion that the <u>controlling</u> facts are not in dispute so that the Court was correct in holding as a matter of law that they were in the course and scope of their employment. Here, as in the *Chesnut* case, crew members are brought within the specified conditions, or prerequisites, of Section 1b of Article 8309, in that their transportation was a part of their contract of employment. Their transportation was furnished as a part of the contract of employment but, we hasten to add, that alone is not sufficient to sustain their claim, for we view the law to be that additionally

it must be shown that their injuries were received while engaged in or about the furtherance of the employer's affairs or business. Our holding is that the requirement of the employees being in the course and scope of their employment in the furtherance of the employer's affairs is satisfied by the undisputed facts as to the plan of getting them to and from the job location in a remote area and the benefits which such plan conferred upon the employer. The necessity for such a plan in order for the operations of the drilling rig to be continuous, and the benefits of such a plan, as discussed in the *Chesnut* case, place them within the course of their employment. The controlling facts as to that plan of transportation and as to the benefits to the employer are undisputed. No contention has been made of disputed facts, and the evidence we have relied on comes from both the employer and employees. The trial Court was correct in holding as a matter of law that the injuries were sustained in the course of employment.

■ Certain of the Appellees insist that all that is necessary to sustain the ruling that the injuries occurred in the course of their employment is the fact that their transportation was furnished as a part of their contract of employment. We do not agree. We do not so hold. We must not lose sight of the fact that workmen's compensation benefits are for injuries on the job—in the course of employment—whether or not at the job site, and they must be received while in the furtherance of the employer's affairs or business. The furnishing of transportation as a part of the contract of employment standing alone is not sufficient. We do not construe *Texas Employers' Ins. Ass'n v. Inge* as so holding. 146 Tex. 347, 208 S.W.2d 867 (1948). There the Court noted: "The location of the drilling site in an uninhabited area made it essential that Appleby furnish transportation to his employees * * *." And the Court said: "The employer's affairs and business were being furthered by the transportation of the members of the crew to and from the well site * * *." Any

doubt about the matter has been laid to rest by the later cases of the Supreme Court in such cases as *Texas General Indemnity Company v. Bottom*, 365 S.W.2d 350 (Tex. 1963); *Jecker v. Western Alliance Insurance Company*, 369 S.W.2d 776 (Tex.1963); *Shelton v. Standard Insurance Company*, 389 S.W.2d 290 (Tex.1965), and *Agricultural Insurance Co. v. Dryden*, 398 S.W.2d 745 (Tex.1965).

Being of the opinion that the trial Court was correct in holding as a matter of law that the injuries were sustained in the course of employment, the judgment of the trial Court is in all things affirmed.