COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



|  |  |  |
|---|---|---|
| | § | |
| STEVEN PAINTER, TONYA WRIGHT, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF EARL A. WRIGHT, III, DECEASED, VIRGINIA WEAVER, INDIVIDUALLY AND AS NEXT FRIEND OF ALBERT A. CARILLO, A MINOR, TABATHA P. ROSELLO, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF ALBERT CARILLO DECEASED, | § § § § § § | No. 08-14-00134-CV Appeal from 83rd District Court of Pecos County, Texas |
| Appellants, | § | (TC # P-6666B-83-CV) |
| v. | § | |
| AMERIMEX DRILLING I, LTD., | § | |
| Appellee. | § | |
| | § | |

## **O P I N I O N**

This appeal asks us to decide if the proof necessary to place an employee within the "course and scope" of employment for the purposes of vicarious liable differs from that under the Texas Worker's Compensation Act. The question arises in the context of an oil field employee, who after his shift had ended at a remote drilling site, was involved in a tragic automobile accident while transporting his crew to company provided housing. Two of his co-

workers were killed and another seriously injured. If this were a worker's compensation case, we think it clear that the evidence would raise at least a fact issue as to whether the employee would be in the course and scope of his employment. But in the context of vicarious liability--making the employer liable for the conduct of the employee--we find the standard of proof is higher and was unmet on this record. We accordingly affirm the trial court's summary judgment rendered in favor of the employer.

## FACTUAL SUMMARY

On July 28, 2007, Earl Wright, Albert Carillo,[1] and Steven Painter were riding in a vehicle being driven by their crew leader, J.C. Burchett. All were employees of Amerimex Drilling I, Ltd. (Amerimex). They had finished their shift on a drilling rig and were in transit to a "bunkhouse" provided by Amerimex which was located some 30 to 40 miles away. Burchett's vehicle struck a car driven by Sarah Pena; Earl Wright and Albert Carillo were killed in the crash, and Steven Painter was seriously injured. Steven Painter, joined with the wrongful death beneficiaries of Earl Wright and Albert Carillo, (collectively Appellants) sued Burchett (the driver); Amerimex (which was hired to drill an oil and gas well); Sandridge Energy, Inc. (the owner of the oil and gas lease); and Sarah Pena (the driver of the other car involved in the accident).

Sandridge had obtained a lease to drill oil and gas wells on the Longfellow Ranch which is located south of Fort Stockton. Sandridge hired Amerimex to do the actual drilling. Amerimex was hired under a "Daywork Drilling Contract" that contemplated the drilling could take as long as ninety days. Sandridge was to pay Amerimex a designated daily rate. In exchange, Amerimex was to provide a drilling rig and a crew each day. In addition to the daily

---

[1] The last amended petition spells this name as both Carillo and Carrillo. We have used the spelling as contained in the style of the case.

rate that Sandridge was to pay Amerimex, it was obligated under the contract to pay various "bonus" amounts for Amerimex employees. One of those amounts included paying each "driller" a bonus of "$50/day to drive crew out to well location [sic]." A driller is the leader of a crew consisting of four to six workers. Amerimex would invoice Sandridge for the bonus amounts, which when paid, would then be distributed to the workers along with their regular pay. Sandridge needed to pay these bonuses because otherwise there was a risk that Amerimex' crew would be hired away by other drilling companies operating in the area. Sandridge may also have paid the bonus to one driver to reduce the amount of traffic going back and forth from the Longfellow ranch, which had thirty or more rigs operating at one time.

Sandridge did not allow on site housing which effectively required Amerimex' crew to commute to the well site. Burchett's crew included Wright, Carillo, and Painter; Burchett was the "driller" and thus entitled to the driving bonus. Burchett's crew members apparently lived in Big Spring or Abilene, a two and half hour drive away from the drilling rig. Accordingly, Amerimex placed a "bunkhouse" in Fort Stockton which was some 30 miles away. There was no requirement that the crews live in the bunkhouse, or that they had to ride with their driller when going to and from work. But on this job they did.

As it turned out with Burchett's crew, he was the only one with a vehicle at the job. The rest of his crew had carpooled with Burchett from Big Spring and they rode out to the well site each day in Burchett's personal truck and then back again after the shift ended. Once they left the rig site for the bunkhouse, they were free to stop along the way, and no one provided them a route to take, though there is some evidence in the record that U.S. 385 was the only route known to them. On occasion, they would make the trip all the way back to Big Spring, but this was their choice.

3

Burchett's crew worked from 6 p.m. to 6 a.m. for seven days on, and then they got seven days off.  On the morning of July 28, 2007, after finishing their sixth shift, they were driving back to the bunkhouse.  For reasons unknown, Burchett ran into the back of Ms. Pena's car while on U.S. 385 just outside of Fort Stockton.

Burchett was also seriously hurt in the accident.  He sought worker's compensation benefits, necessarily contending that he was injured in the course and scope of employment at the time of the accident.  Amerimex' workers' compensation insurance carrier, Texas Mutual Insurance Company, contested those benefits which culminated in a contested case hearing before Texas Department of Insurance Workers' Compensation Division (TDI).  Amerimex itself sought to participate at the hearing claiming that it had standing, and in fact urged that Burchett was in the course and scope of his employment at the time of the accident.  The TDI found that Burchett's injury was compensable under the Act because he was paid to transport his crew to and from the worksite and the company bunkhouse.  Moreover, delivering a crew to the worksite each day directly furthered the business interests of Amerimex.

None of the Appellants, however, filed claims for workers' compensation benefits.  But Amerimex, claiming again to have standing before the TDI, attempted to initiate benefit proceedings on their behalf.  In part, Amerimex contended that when an employee driver of a vehicle is in the course and scope of employment, so too would be any employee passengers.  The TDI found Amerimex lacked standing to initiate benefit proceedings on Appellants' behalf, and even it if did, the employee passengers did not sustain compensable injuries.

Undeterred by the TDI ruling, Amerimex first moved for summary judgment in this lawsuit by contending that all of the employees were in the course and scope of employment and

the exclusive remedy provisions of the Act barred the claims against it.[2] Alternatively, it claimed that none of the employees, including Burchett, were in the course and scope of employment and thus it owed no duty to Appellants. That motion was denied. Appellants later filed a Fourth Amended Petition that claimed Amerimex was vicariously liable for Burchett's conduct because he was an employee engaged in activities within his general authority and in furtherance of his employer's business. Appellants contended that Amerimex had the right to control Burchett and is accordingly vicariously liable for his torts.

Amerimex then filed another summary judgment motion claiming that "Amerimex's lack of control over Burchett at the time of the accident" defeats vicarious liability as a matter of law.[3] This motion was filed as both an affirmative and no evidence motion under TEX.R.CIV.P. 166a(c) and (i). Appellants' response claimed that the right of control was relevant only to the question of whether Burchett was an employee, and not to whether he was acting within the scope of his employment at the time of the accident. Instead, Appellants contended the only pertinent inquiry was whether Burchett was acting in the furtherance of his employer's business. The summary judgment response attached no evidence germane to the vicarious liability claim, but it did incorporate Appellants' responses to the previous motion for summary judgment that Amerimex has filed.[4] The trial court granted judgment Amerimex on this ground, and severed the judgment from the remaining claims.

---

[2] TEX.LAB.CODE ANN. § 408.001(a)(West 2015)("Recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage or a legal beneficiary against the employer or an agent or employee of the employer for the death of or a work-related injury sustained by the employee.").

[3] Several other grounds were asserted in the motion pertained to the standing of various claimed wrongful death beneficiaries, but those issues are NOT before us.

[4] The record in this case is something of a challenge. The Clerk originally included the attachments to Amerimex's prior motion for summary judgment as the attachment to the motion now before us. Amerimex pointed this issue out, and supplemented the record with the correct attachments, but only *after* Appellants filed their brief. Amerimex

*Issues on Appeal*

In a single issue on appeal, Appellants contend that there are material fact issues as to whether Burchett was in the course and scope of his employment with Amerimex at the time of the accident such that Amerimex is vicariously liable to Appellants under the doctrine of respondeat superior. We discern two primary threads to Appellants' argument. First, they contend the nature of remote drilling sites presents an exception to the general rule which holds that coming from or going to work is not within the course and scope of employment. They bolster this argument by contending that Burchett was paid to transport the crew, and not merely reimbursed for travel expenses. Second, Appellants contend the car-pooling arrangement was in furtherance of Amerimex's business as it ensured that a complete drilling crew came to the drilling rig each day.

## STANDARD OF REVIEW

We review a trial court's decision to grant summary judgment *de novo. Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). Rule 166a(i) permits a party to move for a no-evidence summary judgment "without presenting summary judgment evidence," but it requires the moving party to "state the elements as to which there is no evidence." TEX.R.CIV.P. 166a(i); *Wade Oil & Gas, Inc. v. Telesis Operating Company, Inc.*, 417 S.W.3d 531, 540 (Tex.App.--El Paso 2013, no pet.); *Aguilar v. Morales*, 162 S.W.3d 825, 834 (Tex.App.--El Paso 2005, pet. denied). The burden then shifts to the non-movant to produce summary judgment evidence raising a genuine issue of material fact regarding each element challenged in the motion. *Wade Oil & Gas*, 417 S.W.3d at 540. The trial court must grant the motion unless the

---

claims that some of Appellants record citations are to matters outside the summary judgment record because they were attachments to the previous motion for summary judgment. But because Appellant's response to the latest motion for summary judgment incorporated by reference the pleadings and its previous responses, we consider all the evidence from the entire record in resolving this appeal.

6

non-movant produces summary judgment evidence raising a genuine issue of material fact. TEX.R.CIV.P. 166a(i).

A no-evidence motion for summary judgment is essentially a pretrial directed verdict, and we apply the same legal sufficiency standard of review as we would for a directed verdict. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003). Under this standard, we review the evidence in the light most favorable to the non-movant, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). A genuine issue of material fact is raised if the non-movant produces more than a scintilla of evidence regarding the challenged element. *King Ranch*, 118 S.W.3d at 751. More than a scintilla of evidence exists when reasonable and fair-minded individuals could differ in their conclusions. *King Ranch*, 118 S.W.3d at 751. There is not a scintilla of evidence when the evidence is so weak as to do no more than create a mere surmise or suspicion of material fact. *Wade Oil & Gas*, 417 S.W.3d at 540. Evidence that fails to constitute more than a mere scintilla is, in legal effect, no evidence at all. *Lozano v. Lozano*, 52 S.W.3d 141, 148 (Tex. 2001); *Wade Oil & Gas*, 417 S.W.3d at 540.

Amerimex also asserted a traditional summary judgment under TEX.R.CIV.P. 166a(c). Under a traditional motion, the moving party carries the burden of showing that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *Diversicare General Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex. 2005); *Nixon v. Mr. Property Mgmt. Co., Inc.*, 690 S.W.2d 546, 548 (Tex. 1985). Evidence favorable to the non-movant will be taken as true in deciding whether there is a disputed issue of material fact. *Fort Worth Osteopathic Hospital, Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004); *Tranter v. Duemling*, 129 S.W.3d 257,

7

260 (Tex.App.--El Paso 2004, no pet.). All reasonable inferences, including any doubts, must be resolved in favor of the non-movant. *Fort Worth Osteopathic Hospital*, 148 S.W.3d at 99. Once the movant establishes its right to summary judgment, the burden then shifts to the non-movant to present evidence which raises a genuine issue of material fact, thereby precluding summary judgment. *See City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex. 1979).

## STANDARDS FOR VICARIOUS LIABILITY

Only in certain defined situations is one person required to pay for the misdeeds of another. An employer, for instance, may be held liable for the tortious acts of an employee committed within the course and scope of employment. *See Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex. 1998). There are a number of possible justifications for this rule, including allocating the risk of loss to the employer who selected the employee, and away from the innocent victim. *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 541 (Tex. 2002) *quoting* Keeton et al., PROSSER AND KEETON ON THE LAW OF TORTS § 69, at 499-501 (5th ed. 1984). But the most frequently offered reason for imposing vicarious liability on the master for the servant's conduct is the master's right to control the means and methods of the servant's work. *Id*; *see also Newspapers, Inc. v. Love,* 380 S.W.2d 582, 585-86 (Tex. 1964); RESTATEMENT (SECOND) OF AGENCY § 220, cmt. D. Our supreme court has in fact said that the right to control is the "supreme test" for the existence of the master-servant relationship and "thus whether the rule of vicarious liability applies." *Wolff*, 94 S.W.3d at 542, *quoting Golden Spread Council, Inc. No. 562 of Boy Scouts of Am. v. Akins*, 926 S.W.2d 287, 290 (Tex. 1996) It follows, therefore, that once the control ends--as when the employee leaves the workplace--the master's potential for vicarious liability also ends in all but the most extraordinary situations.

8

*See Loram Maintenance of Way, Inc. v. Ianni*, 210 S.W.3d 593 (Tex. 2006)(employer not liable for off duty conduct of employee over whom it did not exercise control).

And following this logic, an employee traveling to and from work is generally not in the course and scope of their employment for vicarious liability purposes (the "coming and going rule"). *Atlantic Indus., Inc. v. Blair*, 457 S.W.3d 511, 516 (Tex.App.--El Paso 2014, pet. filed); *Wilson v. H.E. Butt Grocery Co.*, 758 S.W.2d 904, 907 (Tex.App.--Corpus Christi 1988, no writ); *London v. Texas Power and Light Co.*, 620 S.W.2d 718, 719-20 (Tex.Civ.App.--Dallas 1981, no writ). Another rationale for this rule is that the risks attendant to transportation are not unique to the workplace, but are shared by the motoring public as a whole. *Smith v. Texas Employers' Ins. Assoc.*, 129 Tex. 573, 105 S.W.2d 192, 193 (1937); *see also Evans v. Ill. Emp'rs Ins. of Wausau*, 790 S.W.2d 302, 305 (Tex. 1990)("The risks to which employees are exposed while traveling to and from work are shared by society as a whole and do not arise as a result of the work of employers.").

*Course and Scope of Employment at Remote Drilling Sites*

Appellants acknowledge the coming and going rule, but argue that Texas has carved out an exception for travel to and from drilling rigs in remote locations. They primarily rely on a line of case, all in the worker's compensation context, that have held that a worker injured while traveling to and from a remote drilling site is entitled to worker's compensation benefits. *Johnson v. Pacific Employers Indemnity Co.*, 439 S.W.2d 824 (Tex. 1969); *Janak v. Texas Employers' Ins. Ass'n.*, 381 S.W.2d 176 (Tex. 1964); *Texas Employers' Ins. Ass'n. v. Inge*, 208 S.W.2d 867, 868 (Tex. 1948); *Texas Employers' Ins. Ass'n v. Byrd*, 540 S.W.2d 460 (Tex.Civ.App.--El Paso 1976, writ ref'd n.r.e.); *Liberty Mut. Ins. Co. v. Chesnut*, 539 S.W.2d 924 (Tex.Civ.App.--El Paso 1976, writ ref'd n.r.e.).

This Court's decision in *Chesnut* is illustrative. In *Chesnut*, a driller transported three crew members from Odessa to a drilling site near Fort Stockton. 539 S.W.2d at 925. As here, they were involved in an accident which killed or injured the occupants of the driller's car. *Id*. The driller was paid 0.14 cents per mile to transport his crew. *Id*. The transportation cost was paid to compete in the marketplace; without it the driller and crew would look for work elsewhere. *Id.* at 927. The employer acknowledged the importance of having the driller deliver his entire crew to the rig site. *Id*. While the crew was not required to ride with the driller, they usually did. *Id*. This court held that the evidence supported a jury finding that both the driller (as driver) and the crew (as passengers) were in the course and scope of employment for workers' compensation purposes. *Id*. at 926; *see also Texas Emp. Ins. Ass'n. v. Byrd*, 540 S.W.2d 460, 461 (Tex.App.--El Paso 1976, writ ref's n.r.e.)(noting the facts were nearly identical to *Chesnut*, and required the same holding).

*Chesnut* relies on the earlier Texas Supreme Court opinion *Texas Employers' Ins. Ass'n. v. Inge*, 208 S.W.2d 867, 868 (Tex. 1948). Decided 28 years before *Chesnut*, it proves the adage that the more things change, the more they stay the same. In *Inge*, another drilling crew was working some 30 miles from Fort Stockton where housing was not available. *Id*. at 868. The crew carpooled to the drilling rig; the driver received 0.07 cents per mile for a fixed 63 mile round trip limit. *Id*. While returning from the drilling site for the day, Inge was involved in a collision which took his life. *Id*. The Supreme Court reversed the trial court's judgment for the worker's compensation carrier, noting:

> The location of the drilling site in an uninhabited area made it essential that Appleby furnish transportation to his employees in order to induce them to work on this job. The substance of the arrangement was that the members of the drilling crew were being transported to the well location free of cost to them; and this was an important part of their contract of employment. Those workmen riding in Inge's automobile were given free transportation and the mileage fee

10

paid to Inge presumably was sufficient to take care of his expenses in operating his own automobile. Due to wartime conditions then existing, the arrangement which was made was probably the only one which was practical under the circumstances. The employer's affairs and business were being furthered by the transportation of the members of the crew to and from the well site in Inge's automobile as effectively as if the employer himself owned the automobile which was being used.

*Id*. at 352.

Nor can we question the vitality of these older precedents. The Texas Supreme Court recently decided *Seabright Ins. Co. v. Lopez*, 465 S.W.3d 637 (Tex. 2015) which again dealt with an employee servicing a remote work site. The employee was provided a vehicle, and authority to rent a motel room of his choice while doing work some 450 miles from home. While en route to a gas processing plant, the employee and his crew were involved in an accident, killing the employee. The court upheld a summary judgment in favor of the employee's family under the workers' compensation act. The issue before the court was whether at the time of the accident the employee was in the course and scope of employment. The record established as a matter of law both that the injury originated in the employer's business, and occurred in the furtherance of the employer's business.[5] A travel injury *originates* in the employer's business if the employee's travel was "pursuant to express or implied conditions of his employment contract." *Id*. at 642, *citing Meyer v. W. Fire Ins. Co.*, 425 S.W.2d 628, 629 (Tex. 1968)(citations omitted). Lopez' employer routinely sent half its workforce on temporary assignment to remote locations. Lopez himself was part of a "specialized, non-local work crews in constantly changing, remote

---

[5] The Act defines course and scope of employment as:

> [A]n activity of any kind or character that has to do with and originates in the work, business, trade, or profession of the employer and that is performed by an employee while engaged in or about the furtherance of the affairs or business of the employer. The term includes an activity conducted on the premises of the employer or at other locations.

TEX.LAB.CODE ANN. § 401.011(12)(West 1015. From this definitions, there is a two part test for course and scope of employment: the injury must "(1) relate to or originate in, and (2) occur in the furtherance of, the employer's business." *Leordeanu v. American Protection Insurance Co.*, 330 S.W.3d 239, 241 (Tex. 2010)

locations on temporary assignments." *Id*. at 644. He customarily would need "temporary housing and travel from that temporary housing to that temporary, remote location." *Id*. at 644. The travel must also *further* the employer's business. The court found the facts easily met this test, as without the travel, the employer could not service its client.

Comparing the facts of this case to *Lopez* or *Inge*, we would be hard pressed not to find at least a fact issue as to whether Burchett was in the course and scope of employment for workers' compensation purposes. Amerimex is in the drilling business and sends its drilling rigs to remote locations on a routine basis. It requires a specialized work crew to run the rigs, and therefore needs its employees to travel to remote locations on temporary assignment. Because it would be impractical for its crew to make the two and half hour drive to their home each day (and then a similar trip back to the worksite the next day), Amerimex provided company housing closer to the worksite. Amerimex was at least involved in the disbursement of a $50 dollar bonus to the driller for transporting his crew to the rig site.[6]

Amerimex also clearly benefited from Burchett sheparding his crew to and from the rig site. Amerimex was contractually obligated to provide a drilling rig and crew each day. Burchett needed a crew to run the rig. Burchett testified that it was his job to get the crew out the worksite. Having Burchett transport his crew helped insure a complete crew would make it the worksite. Compensating the driller (or at least someone on the crew) to provide transportation was necessary to keep the crew from being hired away by other companies in the area. In this sense, the transportation arraignment was "an essential and integral part of the contract of

---

[6] Amerimex argues that the Daywork Drilling Contract only paid Burchett for taking the crew to the worksite, and at the time of the accident, they were returning from the site. We think this too fine a distinction as Amerimex itself understood that if Burchett drove the crew to the remote site, he most likely would need to get them back to the bunkhouse at the end of the shift. There is also testimony in the record, unobjected to by Amerimex, that the pay was for both transporting the workers to and from the worksite.

employment . . . ." *Inge*, 208 S.W.2d at 871. Were the issue before us whether Burchett was within the course and scope under the workers' compensation act, we would be constrained by *Lopez* and *Inge* to at least find a genuine issue of material fact.[7]

But as Amerimex points out, these remote drilling site cases were decided under the statutory definition of course and scope of employment found in the Texas Workers' Compensation Act. The Act represents a statutorily imposed compromise between the worker and employer whereby a worker forfeits their right to sue the employer in exchange for certain, but more limited benefits. *Texas Workers' Compensation Com'n v. Garcia*, 893 S.W.2d 504, 511-12 (Tex. 1995). It is liberally construed in favor of the employee. *Kroger Co. v. Keng*, 23 S.W.3d 347, 349 (Tex. 2000). Conversely, the context of this suit is an effort to impose vicarious liability on one party for the conduct of another; a concept which is generally a pure policy question of allocation of risk. *Wolff*, 94 S.W.3d at 541. The rules governing course and scope under the Act, and for vicarious liability under respondeat superior, can dictate different outcomes based on the same set of facts. *See Shelton v. Standard Ins. Co.*, 389 S.W.2d 290 (Tex. 1965)(upholding course and scope finding for worker traveling out of town in workers' compensation case, but noting in dicta that result would be different in respondeat superior context). So we arrive at the critical question in this appeal: is the standard for proving course and scope of employment under the workers' compensation act different from that to prove course and scope of employment for vicarious liability purposes? Specifically, does a plaintiff seeking to impose vicarious liability on an employer for the acts of a traveling employee need to

---

[7] The findings of fact from the TDI are in the summary judgment record and include this findings:

> It was directly in the furtherance of the business-affairs of the Employer for the Claimant/Driller to provide worksite transportation for his crew, because if a sufficient crew was not readily available at the remote rig site, Employer's duties to drill that well would suffer to the business detriment of Employer.

show not only the transportation originated and furthered the employer's business, but also show the employer controlled the transportation?

## RIGHT OF CONTROL AND VICARIOUS LIABILITY

The sole ground in Amerimex's motion for summary judgment claims: "Amerimex's lack of control over Burchett at the time of the accident--which defeats vicarious liability--mandates summary judgment on the case as a whole." The motion argued that Appellants must provide evidence that the employer had the right to control the conduct of the employee at the time of the alleged tort for the purpose of making an employer vicariously liable for the conduct of an employee. For an employee driving away from the worksite, this would mean the employer did or could control the details of the work (the drive) through such means as directing the route.

Conversely, Appellants steadfastly claimed that all they needed to show was that the employee was acting in furtherance of the employer' business; control is not a formal element. Both positions are not without support.

In the travel context, several courts have required that a plaintiff seeking to impose vicarious liability on an employer for the acts of an employee must prove the employer's control over the travel. *Smith v. Universal Elec. Const. Co.*, 30 S.W.3d 435, 440 (Tex.App.--Tyler 2000, no pet.)("Under this doctrine, when the employer does not require any particular route, the employee is not engaged in the furtherance of the employer's business."); *J & C Drilling Co. v. Salaiz*, 866 S.W.2d 632, 636 (Tex.App.--San Antonio 1993, no pet.)("When the employer does not require any particular route, the employee is not engaged in the furtherance of the employer's business."); *Wilson v. H.E. Butt Grocery Co.,* 758 S.W.2d 904,  907 (Tex.App.--Corpus Christi 1988, no writ)("When the employer neither requires any particular means of travel nor directs

the employee to take a particular route, the employee is not engaged in the furtherance of the master's business."); *London v. Texas Power & Light Co.*, 620 S.W.2d 718, 720 (Tex.Civ.App.-- Dallas 1981, no writ)("In the instant case, Martin was neither directed as to what manner of transportation he was to use to get to the temporary job site, nor was he directed what route to take. Consequently, we hold that notwithstanding the mileage allowance, . . . Martin was not acting within the course and scope of his employment at the time and on the occasion of the accident in question.").

Conversely, Appellants focused the trial court on the Texas Pattern Jury Charges which include two distinct questions to establish an employer's vicarious liability. The first question asks whether a person is an employee of another:

> On the occasion in question, was [J.C. Burchett] acting as an employee of [Amerimex]?
>
> An employee is a person in the service of another with the understanding, express or implied, that such other person has the right to direct the details of the work and not merely the result to be accomplished.

Comm. on Pattern Jury Charges, State Bar of Tex., *Texas Pattern Jury Charges: General Negligence* PJC 10.1 (2014). But assuming that one is an employee, as Amerimex concedes Burchett was, the only question is whether the employee was acting within the course and scope of the employment, and that question omits any explicit control language:

> On the occasion in question, was [J.C. Burchett] acting in the scope of his employment?
>
> An employee is acting in the scope of his employment if he is acting in the furtherance of the business of his employer and with the scope of the general authority given him by his employer."

Comm. on Pattern Jury Charges, State Bar of Tex., *Texas Pattern Jury Charges: General Negligence* PJC 10.6 (2014)(adding general authority clause per second comment). Of course,

unless specifically approved by the Texas Supreme Court, the Texas Pattern Jury Charges are only persuasive authority before this Court. *See Ishin Speed Sport, Inc. v. Rutherford*, 933 S.W.2d 343, 350 (Tex.App.--Fort Worth, 1996 no pet.). And one of the cases cited in the Commentary for PJC 10.6, *Parmlee v. Texas & New Orleans RR Co.*, 381 S.W.2d 90 (Tex.Civ.App.--Tyler 1964, writ ref'd n.r.e.), identifies the employer's control as a necessary element of proving course and scope. *Id.* at 93 ("The record is entirely devoid of evidence relative to the right of control of the servant by the master."). *Parmlee* in fact states: "The law is well established in this state that the test of a master's liability for negligent acts of his servant is whether the master had the right and power to direct and control the servant in performance of the causal act or omission at very instant of the occurrence of such act or neglect." *Id.*[8]

But we acknowledge a number of cases which set out the two prong test for course and scope (origination and furtherance of business) as found PJC 10.6 as the appropriate test. In *Robertson Tank Lines, Inc. v. Van Cleave*, 468 S.W.2d 354, 357 (Tex. 1971) the court decided whether a trucker who parked a company owned truck along the roadside to visit a relative was within the course and scope of employment. *Id.* at 357. The court there wrote: "It is also the rule that in order to render the master liable for an act of his servant, the act must be committed within the scope of the general authority of the servant in furtherance of the master's business

---

[8] *Parmlee* cites a number of earlier decisions in support of this proposition, including *American National Ins. Co. v. Denke*, 128 Tex. 229, 95 S.W.2d 370 (Tex. 1936)(the test to determine an employer's liability for the acts of its employees is whether the master has the "right and power to direct and control [the servant] in the performance of the causal act or omission at the very instance of the act or neglect."). *Denke* cites support for that proposition from this court's decision in *Trachtenberg v. Castillo*, 257 S.W. 657, 659 (Tex.Civ.App.--El Paso 1923, writ dism'd w.o.j.)("The conclusive test of the relationship is whether the alleged employer had the right to control the action of the person doing the alleged wrong at the time of and with reference to the matter out of which the alleged wrong sprang."). *Trachtenberg* in turn relied on two earlier decisions, *Cunningham v. Intern. Ry Co.*, 51 Tex. 510 (1879) and *Cunningham v. Moore*, 55 Tex. 373 (1881). Without citation to all the authorities in these earlier cases, we take it as beyond argument that the element of control has always played a central role in deciding if a particular employee's actions were within in the scope of the employment.

16

and for the accomplishment of the object for which the servant is employed." *Id*. No specific element of control is mentioned.

In *London v. Texas Power & Light Co.*, language in the opinion conflates the origination and furtherance of business tests with control:

> The test of a master's liability for the negligent acts of his servant is whether at the time and occasion in question, the master has the right and power to direct and control the servant in the performance of the causal act or omission at the very instance of its occurrence. *Stated another way*, for an act to be within the course and scope of a servant's employment, it is necessary that it be done within the general authority of the master in furtherance of the master's business, and for the accomplishment of the object for which the servant is employed.

620 S.W.2d at 719-20 [emphasis supplied][internal citation omitted]. This court in fact cited *London* for the proposition that a plaintiff proves control by proving the two prong general authority and furtherance of the master's business. *Chevron, U.S.A., Inc. v. Lee*, 847 S.W.2d 354, 355 (Tex.App.--El Paso 1993, no writ)("To show the requisite degree of control, the act must be 'done within the general authority of the master in furtherance of the master's business, and for the accomplishment of the object for which the servant is employed.'"). While acknowledging the difficulty in reconciling these precedents, we think it clear that if the issue is raised by the defendant, some proof of control is required to place an employee in the course and scope of employment for the purposes of vicarious liability.

While Appellants argue for a remote drilling site exception to the coming and going rule, the facts of this case more closely describe a special mission. "A special mission is a specific errand that an employee performs for his employer, either as part of his duties or at his employer's request." *Upton v. Gensco, Inc.*, 962 S.W.2d 620, 621-22 (Tex.App.--Fort Worth 1997, pet. denied). It involves work or a work-related activity apart from the employee's regular job duties. *See id.* It is also an exception to the coming and going rule when the mission is at the

17

direction of his employer, or is otherwise in furtherance of the employer's business with the express or implied approval of the employer. *Chevron, U.S.A., Inc. v. Lee*, 847 S.W.2d 354, 356 (Tex.App.--El Paso 1993, no writ); *Gebert v. Clifton*, 553 S.W.2d 230, 232 (Tex.Civ.App.-- Houston [14th Dist.] 1977, writ dismissed). In this case, Appellants in effect contend that Burchett's mission was to transport his crew to and from the company provided housing in aide of getting his full crew to the drilling site each day. His employer encouraged the carpool by participating in paying him a bonus for transporting the crew.

But the special mission cases in the vicarious liability context have required the employer to control either the particular means of transportation or the route. *ACME Energy Services, Inc. v. Aranda*, No. 08-02-00205-CV, 2004 WL 868486 at *3 (Tex.App.--El Paso April 22, 2004, pet. denied)(mem. opinion)(dicta); *Upton*, 962 S.W.2d at 621-22); *Farrell v. Commercial Structures and Interiors, Inc.*, No. 05-02-00031-CV, 2002 WL 31411022, at *2 ( Tex.App.--Dallas 2002 Oct. 28, 2002, no pet.)(not designated for publication); *Soto v. Seven Seventeen HBE Corp.,* 52 S.W.3d 201, 206 (Tex.App.--Houston [14th Dist.] 2000, no pet.). Thus to qualify as a special mission, Appellants would need to show some level of control over the means or route taken.

Even under the worker's compensation cases, the courts have not completely ignored the control element. The court in *Inge* discussed the element of control, but noted it lost its importance because "it was simply regarded as unnecessary." *Inge,* 208 S.W.2d at 871. The employer there could presume that the driver would use reasonable care in operating his automobile. *Id.* Because the mileage charge was fixed, the employer had no need to prescribe the route. *Id.* Importantly, the court notes "[t]he record does not negative the power of Appleby to control such details if the occasion should have arisen when the necessity for such supervision might appear, and we think there was reasonable basis in the record for the district court to reach

18

the conclusion that the general power of supervision, implicit in the contract of employment, was not relinquished." *Id*. at 354-55. In Amerimex's affirmative motion for summary judgment, however, it presents evidence as discussed below, challenging the employer's control.

As our supreme court has stated, "the scope and extent of vicarious liability under the common law is clearly a policy determination--pure although not necessarily simple." *Wolff*, 94 S.W.3d at 541. We perceive a sound reason for a requirement of some control. If Amerimex was liable for Burchett's conduct while carpooling simply because it passed along payments for that carpooling, or even having encouraged it, Amerimex would have every incentive to end that practice. Oil field employers might cease to provide encouragement for carpooling at remote drilling sites which would only lead to more vehicles on the road, and correspondingly more accidents.

Rather, it seems to us that before vicarious liability should attach, Amerimex must undertake some control as with the route or the means of transport, which might correspondingly reflect on the risk of the accident itself. This requirement is line with the Texas Supreme Court's decisions regarding an employer's liability for off duty employees. Generally, an employer owes no duty for the actions of its off duty employees. *Ianni,* 210 S.W.3d at 594 (as a general rule, "an employer owes no duty to protect the public from the wrongful acts of its off-duty employees that are committed off the work site.") The only exception is where the employer exercises control over the off duty employee. *Otis Eng'g Corp. v. Clark,* 668 S.W.2d 307, 308, 311 (Tex. 1983). In *Otis*, for instance, the employer sent the employee home in a vehicle and made a bad situation worse. *Otis,* 668 S.W.2d at 311. By the same token, Amerimex would need to retain the right to, or exercise some control over how Burchett transported his crew as a predicate to shifting the risk of any accident to it.

19

Here, Amerimex expressly raised the issue of control and we believe it therefore became an element that Appellants were required to prove.[9] We now turn to whether Appellants raised a fact issue as to control on this summary judgment record.

**EVIDENCE OF CONTROL?**

To defeat the no evidence motion for summary judgment, Appellants must have presented more than a scintilla of evidence regarding the challenged element. *King Ranch*, 118 S.W.3d at 751. Amerimex also challenged the element of control through an affirmative motion for summary judgment. Under that part of the motion, we focus on whether Amerimex carried its burden of showing that there is no genuine issue of material fact on control. *Rubio*, 185 S.W.3d at 846.

The summary judgment record includes testimony from both Burchett and Amerimex's Chief Financial Officer, Glenn Murphee, regarding control. Burchett's affidavit states that on the day of the accident his shift ended at 6 a.m. when he signed a "tower report." He was then driving Painter, Wright, and Carillo, in his personal vehicle to the bunkhouse. In his words, "I was not working at the time." Once off the site, the group was "free to spend our time as we choose. We would decide as a group whether to stop for food or what to do with our time. Amerimex has no control over our time off."

Glen Murphee also testified to the control issue. He stated that "I have no control over those people when they leave the rig." In his words, "They can get to work any way they want to

---

[9] Some courts referencing control have included it as a part of the "furtherance of the master's business" element for course and scope. *E.g. J & C Drilling*, 866 S.W.2d at 636 ("When the employer does not require any particular route, the employee is not engaged in the furtherance of the employer's business."). Other cases, like *Inge*, do not discuss control in reference to either the origination or furtherance element, but almost as a separate element. And most recently in *Lopez*, the court does not discuss control in analyzing either the origination or furtherance elements. Whether control in the vicarious liability context springs out of the origination or furtherance elements for course and scope, or is distinct element to itself, is more of an academic than practical inquiry. We only note that it has firmly found a place in the vicarious liability case law and we leave it to the Texas Supreme Court to wipe that slate clean, if necessary.

get to work. They start work when they get to the rig, and that's when work begins… Outside that, you know, we have no control over them." There was no evidence of a company safe driver program that applied to Burchett while he was driving the crew. There was no evidence that Amerimex trained or otherwise qualified drivers. It merely passed along the driver bonus that Sandridge paid.

We might agree that if the route taken were the only issue, there was no evidence that there was more than one route available, and control over the route would be false issue. But we find no evidence that Amerimex had or exercised any control over the manner of transportation-- the type of vehicle used, the qualifications of the driver, the number of passengers, or any other issues which might implicate the kind of control that justifies shifting the risk of loss from one party to another. We simply find no evidence in the record demonstrating that Amerimex had the right to exercise, or did in fact exercise, any control over the carpooling of the crew. *See Pilgrim v. Fortune Drilling Co., Inc.*, 653 F.2d 982, 986-87 (5th Cir. 1981)(employer not vicariously liable under respondeat superior when both employer and employee testified there was no control over transport of drilling crew, despite per diem paid for the same). We overrule Appellants sole issue and affirm the trial court's judgment below.

November 3, 2015

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, J., and Chew, C.J. (Senior)
Chew, C.J. (Senior), sitting by assignment
Chew, C.J. (Senior), dissenting without opinion

21