# IN THE SUPREME COURT OF TEXAS

════════════

No. 14-0272

════════════

SeaBright Insurance Company, Petitioner,

v.

Maximina Lopez, Beneficiary of Candelario Lopez, Deceased, Respondent

═══════════════════════════════════════════════════════

On Petition for Review from the
Court of Appeals for the Fourth District of Texas

═══════════════════════════════════════════════════════

**Argued March 26, 2015**

Justice Green delivered the opinion of the Court, in which Chief Justice Hecht, Justice Willett, Justice Guzman, Justice Lehrmann, Justice Boyd, Justice Devine, and Justice Brown joined.

Justice Johnson filed a dissenting opinion.

This workers' compensation case requires us to determine whether summary judgment evidence conclusively established that an employee was acting in the course and scope of his employment when he died in an automobile accident while traveling to a job site. A contested case hearing officer for the Texas Department of Insurance, Workers' Compensation Division, heard evidence and determined that the employee suffered a compensable injury, and a three-member appellate panel affirmed. The insurer sought judicial review, and the trial court granted summary judgment for the claimant and affirmed the administrative decision. The court of appeals likewise

affirmed. 427 S.W.3d 442, 450–51 (Tex. App.—San Antonio 2014). We agree that conclusive evidence established that the employee was acting in the course and scope of his employment at the time of his death and affirm the court of appeals' judgment.

## I. Factual and Procedural Background

The relevant facts of this case are undisputed. Interstate Treating, Inc., a company that fabricated and installed materials for the oil and gas processing industry, hired Candelario Lopez in 1999.[1] Interstate Treating's primary office and fabrication department was in Odessa, Texas. Interstate Treating provided its installation services at other, often remote, locations. Lopez resided in Rio Grande City, Texas, with his wife, Maximina Lopez, but he never worked in the vicinity of Rio Grande City during his employment with Interstate Treating. When Interstate Treating assigned Lopez to work at remote job sites, Lopez made his own living arrangements—usually staying in a motel—and Interstate Treating paid Lopez an hourly wage plus per diem for his lodging and food expenses. Interstate Treating also would provide Lopez with a company vehicle to use at the remote job locations, but Lopez was not paid for any time traveling to or from the job site.

In September 2007, Interstate Treating assigned Lopez to work on the installation of a gas processing plant near Ridge, Texas—a distance the parties estimate to be 450 miles from Lopez's home in Rio Grande City. Although Interstate Treating expected Lopez to stay in a motel, Lopez had full control of which motel he stayed in while working at the Ridge job site. He chose to stay approximately forty miles from Ridge at a motel in Marlin, Texas. Interstate Treating allowed Lopez

---

[1] Lopez worked temporary assignments for Interstate Treating. The record indicates that there were times between temporary assignments that Lopez was not working.

to use a company vehicle to drive between his motel in Marlin and the Ridge job site. Interstate Treating paid the vehicle's insurance and provided Lopez with a credit card so that he could fuel the vehicle. Lopez drove from his motel in Marlin to the Ridge job site every day, often allowing other Interstate Treating employees to ride with him. Although Interstate Treating had no express policy regarding carpooling, the use of company vehicles to transport employees to and from remote job sites was a common occurrence. On the morning of September 11, 2007, Lopez was transporting two other Interstate Treating employees to the Ridge job site when he died in an automobile accident.

Maximina sought death benefits from Interstate Treating's workers' compensation insurance carrier, SeaBright Insurance Co. SeaBright denied coverage, taking the position that Lopez was not acting in the course and scope of his employment at the time of the accident. Maximina then initiated an administrative proceeding to challenge SeaBright's denial of benefit payments. The parties participated in a contested case hearing under Texas Labor Code section 410.151, and the hearing officer determined that Lopez was acting in the course and scope of his employment and ordered SeaBright to pay death benefits. A three-member appeals panel affirmed the hearing officer's decision.

SeaBright sought independent judicial review of the administrative decision. SeaBright's petition challenged four administrative determinations:

- Lopez's work involved travel away from Interstate Treating's premises;

- Lopez was engaged in or furthering the affairs or business of Interstate Treating at the time of his fatal vehicle accident on September 11, 2007;

- Lopez sustained damage or harm to the physical structure of his body in the course and scope of his employment at the time of his fatal vehicle accident on September 11, 2007; and

3

- Lopez sustained a compensable injury on September 11, 2007.

Both parties filed motions for summary judgment on the issue of whether Lopez was acting in the course and scope of his employment at the time of the accident. The trial court granted Maximina's motion and denied SeaBright's motion, affirming the administrative decision.

SeaBright appealed, and the court of appeals affirmed. 427 S.W.3d at 450–51. The court of appeals began its opinion by noting that "[f]or an employee's injury to be considered in the course and scope of employment, it must (1) relate to or originate in the employer's business, and (2) occur in the furtherance of the employer's business." *Id.* at 447. In analyzing the first element, the court of appeals concluded that the accident occurred during Lopez's commute from his employer-provided housing to the job site, in an employer-provided vehicle, and in an area of the state he would not have been in but for his employment with Interstate Treating. *Id.* at 450. This evidence of the relationship between Lopez's travel and his employment with Interstate Treating was "so close it can fairly be said the injury had to do with and originated in the work, business, trade, or profession of Interstate [Treating]." *Id.* (citation omitted). Citing this Court's opinion in *Leordeanu v. American Protection Insurance Co.*, 330 S.W.3d 239, 242 (Tex. 2010), the court of appeals held that Lopez's travel to the job site met the second element because such travel always furthers the employer's business. 427 S.W.3d at 447–48. Ultimately, the court of appeals affirmed the trial court's judgment, finding the summary judgment evidence established that Lopez was acting in the course and scope of his employment at the time of the accident as a matter of law. *Id.* at 450–51.

SeaBright petitioned this Court for review. We granted the petition. 58 TEX. SUP. CT. J. 369 (Feb. 23, 2015).

## II. Discussion

We review a grant of summary judgment de novo. *State v. Ninety Thousand Two Hundred Thirty-Five Dollars & No Cents in U.S. Currency ($90,235)*, 390 S.W.3d 289, 292 (Tex. 2013). A party moving for traditional summary judgment has the burden to prove that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We review summary judgment evidence "in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Mann Frankfort Stein & Lipp Advisors, Inc.*, 289 S.W.3d at 848 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)). When both sides move for summary judgment and the trial court grants one motion and denies the other, we review the summary judgment evidence presented by both sides, determine all questions presented, and render the judgment the trial court should have rendered. *Comm'rs Court of Titus Cnty. v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997).

"The Texas Legislature enacted the [Texas Workers' Compensation] Act in 1913 in response to the needs of workers, who, despite escalating industrial accidents, were increasingly being denied recovery." *Kroger Co. v. Keng*, 23 S.W.3d 347, 349 (Tex. 2000) (citation omitted). In order to balance the competing interests of providing "compensation for injured employees while protecting employers from the costs of litigation, the Legislature provided a mechanism by which workers

could recover from subscribing employers without regard to the workers' own negligence while limiting the employers' exposure to uncertain, possibly high damage awards permitted under the common law." *In re Poly-Am., L.P.*, 262 S.W.3d 337, 350 (Tex. 2008) (citations omitted). The Act ultimately struck a bargain that allows employees to receive "a lower, but more certain, recovery than would have been possible under the common law." *Kroger Co.*, 23 S.W.3d at 350 (citation omitted). We liberally construe the Act in favor of injured workers to effectuate these purposes. *In re Poly-Am., L.P.*, 262 S.W.3d at 350.

The Act provides for employee compensation when injuries "arise[] out of and in the course and scope of employment for which compensation is payable." TEX. LAB. CODE § 401.011(10) (defining "compensable injury"). While determining whether an injury is compensable may involve other inquiries, the only issue the parties present in this case is whether Lopez was acting in the course and scope of his employment at the time of his death. *See id.* §§ 401.011(10), (12); 410.302(b) ("A trial [reviewing a final decision of the appeals panel regarding compensability] is limited to issues decided by the appeals panel and on which judicial review is sought."). The Legislature defined "course and scope of employment" to mean:

> [A]n activity of any kind or character that has to do with and originates in the work, business, trade, or profession of the employer and that is performed by an employee while engaged in or about the furtherance of the affairs or business of the employer. The term includes an activity conducted on the premises of the employer or at other locations.

*Id.* § 401.011(12). We have previously stated that a similar statutory definition of "course and scope of employment" required the injury to "(1) relate to or originate in, and (2) occur in the furtherance of, the employer's business." *Leordeanu*, 330 S.W.3d at 241.

Regarding the origination element, "[a]n employee's travel to and from work . . . cannot ordinarily be said to originate in the [employer's] business . . . because '[t]he risks to which employees are exposed while traveling to and from work are shared by society as a whole and do not arise as a result of the work of employers.'" *Id.* at 242 (quoting *Evans v. Ill. Emp'rs Ins. of Wausau*, 790 S.W.2d 302, 305 (Tex. 1990)). However, a distinction can be made if "the relationship between the travel and the employment is so close that it can fairly be said that the injury had to do with and originated in the work, business, trade or profession of the employer." *Shelton v. Standard Ins. Co.*, 389 S.W.2d 290, 292 (Tex. 1965). This inquiry is satisfied if the employee's travel was "pursuant to express or implied conditions of his employment contract." *Meyer v. W. Fire Ins. Co.*, 425 S.W.2d 628, 629 (Tex. 1968) (citations omitted). Courts have generally employed a fact-intensive analysis to determine whether an employee's travel originated in the employer's business, focusing on the nature of the employee's job, the circumstances of the travel, and any other relevant facts. *See, e.g.*, *Tex. Mut. Ins. Co. v. Jerrols*, 385 S.W.3d 619, 630 (Tex. App.—Houston [14th Dist.] 2012, pet. dism'd); *Zurich Am. Ins. Co. v. McVey*, 339 S.W.3d 724, 730 (Tex. App.—Austin 2011, pet. denied); *see also Am. Home Assur. Co. v. De Los Santos*, No. 04-10-00852-CV, 2012 WL 4096258, at *4 (Tex. App.—San Antonio Sept. 19, 2012, pet. denied) (mem. op.).

The facts of this case are most similar to those of *Texas Employers' Insurance Ass'n v. Inge*, 208 S.W.2d 867 (Tex. 1948). In that case, the employee, Inge, worked at a drilling site in an isolated part of Pecos County, Texas, that was 31.5 miles from the nearest city. *Id.* at 867–68. Inge was paid hourly wages while working at the drilling site, but was not paid for travel time to and from the drilling site. *Id.* at 868. However, the employer expected one of its employees to transport the other

7

workers to and from the drilling site and paid that employee seven cents per mile for doing so. *Id.* The employer allowed the workers to determine which employee was to drive, and the group chose Inge. *Id.* The employer paid Inge the seven cents per mile, but did not pay for gasoline or vehicle repairs or exercise control over Inge's route, speed, manner of driving, or schedule. *Id.* Inge later died in a car accident on a return trip from work. *Id.* The parties stipulated to the above facts, and the trial court concluded that Inge was acting in the course and scope of his employment. *Id.* at 867. We affirmed, noting that the "location of the drilling site in an uninhabited area made it essential that [the employer] furnish transportation to his employees," and that "this [free transportation] was an important part of their contract of employment." *Id.* at 869.

While *Inge* was not decided on a motion for summary judgment, we reviewed the trial court's application of the law to the stipulated facts de novo. *See id.* at 867 ("[T]he only matters in dispute were the legal questions whether Inge, at the time of his death, was acting in the course of his employment . . . ."); *see also Amaro v. Wilson Cnty.*, 398 S.W.3d 780, 784 (Tex. App.—San Antonio 2011, no pet.) (reviewing a trial court's application of the law to stipulated facts de novo); *Markel Ins. Co. v. Muzyka*, 293 S.W.3d 380, 384 (Tex. App.—Fort Worth 2009, no pet.) (same); *Panther Creek Ventures, Ltd. v. Collin Cent. Appraisal Dist.*, 234 S.W.3d 809, 811 (Tex. App.—Dallas 2007, pet. denied) (same); *Alma Group, L.L.C. v. Palmer*, 143 S.W.3d 840, 843 (Tex. App.—Corpus Christi 2004, pet. denied) (same). "A trial court has no discretion in deciding the law or its proper application." *Alma Group, L.L.C.*, 143 S.W.3d at 843 (citation omitted); *accord In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 781 (Tex. 2006) (orig. proceeding).

Here, we likewise review the application of law to the summary judgment evidence to determine whether the relationship between Lopez's travel and employment is so close that it can fairly be said that his injury had to do with and originated in Interstate Treating's work, business, trade, or profession. *See Shelton*, 389 S.W.2d at 292. Our starting point is to determine what Interstate Treating's business was. Interstate Treating's president testified in a deposition that, at the time of the accident, Interstate Treating had roughly 150 employees. About half of those employees worked at Interstate Treating's Odessa office fabricating equipment. The other half worked on a temporary assignment installing a gas processing plant near Ridge. The location of installation employees was never permanent, and Interstate Treating installed equipment in multiple states. Although Interstate Treating could have hired local employees at each temporary, remote job site, its general practice was to hire people who had worked on previous installation jobs. From the evidence in the record, we conclude that Interstate Treating's business called for employing specialized, non-local work crews in constantly changing, remote locations on temporary assignments.

We next address the nature of Lopez's employment. Lopez had worked on previous installation jobs for Interstate Treating, and he was hired as a civil foreman at the temporary job site near Ridge. His job required him to oversee the installation of all of the plant's concrete foundations and the placement of the plant's equipment. While working at a temporary, remote job site like the one near Ridge, Lopez and his coworkers were paid per diem to offset lodging and food expenses. Although Lopez could stay at any motel he wished, Interstate Treating expected him to secure temporary lodging rather than commute 450 miles from his home in Rio Grande City. Upon Lopez's

9

request, Interstate Treating provided him with a company vehicle to drive to and from the job site and paid the vehicle's fuel and insurance expenses. Lopez was driving himself and two of his coworkers from the motel to the Ridge job site in the company-provided vehicle when he died.

The ultimate inquiry under the origination element is to determine if the relationship between Lopez's travel and his employment with Interstate Treating "is so close that it can fairly be said that the injury had to do with and originated in the work, business, trade or profession of the employer." *Id.* As discussed above, we conclude that Interstate Treating's business called for employing specialized, non-local work crews in constantly changing, remote locations on temporary assignments. Interstate Treating's business required its installation workers, like Lopez, to obtain temporary housing and travel from that temporary housing to that temporary, remote location. Lopez's travel from his temporary housing to the Ridge job site and, more importantly, the risks associated with such travel were dictated by Interstate Treating's business model and enabled by Interstate Treating's provision of the vehicle and payment of per diem and other expenses. *See Meyer*, 425 S.W.2d at 629 (stating that an employee's travel injuries fall in the course and scope of employment if the travel is "pursuant to express or implied conditions of his employment contract"). As with the employee in *Inge*, who was not provided a company car or fuel expenses but who was paid per mile to transport other employees to a remote work location, the provision of transportation to the temporary, remote work location was an essential part of Lopez's employment. Lopez's travel is more akin to those "employees such as deliverymen, messengers, collectors, and others, who by the very nature of the work they have contracted to do are subjected to the perils and hazards of the streets." *Smith v. Tex. Emp'rs' Ins. Ass'n*, 105 S.W.2d 192, 193 (Tex. 1937). Accordingly, we hold

10

that the relationship between Lopez's travel and his employment "is so close that it can fairly be said that the injury had to do with and originated in the work, business, trade or profession" of Interstate Treating. *Shelton*, 389 S.W.2d at 292. Maximina conclusively established the origination element.

Regarding the furtherance element, we have recognized that "[a]n employee's travel to and from work makes employment possible and thus furthers the employer's business." *Leordeanu*, 330 S.W.3d at 242. Here, it is undisputed that Lopez was traveling to the Ridge job site when he died. Lopez's travel makes "employment possible and thus furthers" Interstate Treating's business. *See id.* Maximina conclusively established the furtherance element.

Even if an employee is engaged in actions that originate in and further the employer's business at the time of injury, the employee may not be acting in the course and scope of his employment if his actions fall in one of two statutory exclusions. The phrase "course and scope of employment" does not include:

    (A) transportation to and from the place of employment unless:

        (i) the transportation is furnished as a part of the contract of employment or is paid for by the employer;

        (ii) the means of the transportation are under the control of the employer; or

        (iii) the employee is directed in the employee's employment to proceed from one place to another place; or

    (B) travel by the employee in the furtherance of the affairs or business of the employer if the travel is also in furtherance of personal or private affairs of the employee unless:

        (i) the travel to the place of occurrence of the injury would have been made even had there been no personal or private affairs of the employee to be

11

furthered by the travel; and

(ii) the travel would not have been made had there been no affairs or business of the employer to be furthered by the travel.

TEX. LAB. CODE § 401.011(12)(A)–(B). "[S]ubsection (A) applies to travel to and from the place of employment," and "subsection (B) applies to other dual-purpose travel." *Leordeanu*, 330 S.W.3d at 248 (footnote omitted). Both the origination and furtherance elements must be satisfied even if an employee qualifies for one of the exceptions to an exclusion under subsections (A) or (B). *See id.* at 244, 249; *Freeman v. Tex. Comp. Ins. Co.*, 603 S.W.2d 186, 192 (Tex. 1980) (stating that the exceptions to the exclusion do "not enlarge the definition of 'course of employment'").

Here, it is undisputed that Lopez was traveling only to his place of employment, rather than furthering any of his personal or private affairs. Therefore, Lopez's travel implicates the exclusion in subsection (A) and not subsection (B). *See Leordeanu*, 330 S.W.3d at 248. It is also undisputed that Interstate Treating provided Lopez with a company vehicle to drive to and from the job site and paid the vehicle's fuel and insurance expenses. These undisputed facts conclusively establish that Interstate Treating paid for Lopez's transportation. Maximina therefore conclusively established the exception to the exclusion in subsection (A)(i). *See* TEX. LAB. CODE § 401.011(12)(A)(i). We therefore hold that Lopez was acting in the course and scope of his employment at the time of the September 11, 2007 accident.

### III. Conclusion

Maximina conclusively established that Lopez's travel to the Ridge job site originated in and furthered Interstate Treating's business, satisfying the statutory definition of "course and scope of

12

employment." Because Interstate Treating furnished and paid for Lopez's transportation, the statutory exclusion in subsection (A) does not apply. Therefore, we hold that Lopez was acting in the course and scope of his employment when he died, and Maximina is entitled to benefits. We affirm the court of appeals' judgment.

_____
Paul W. Green
Justice

OPINION DELIVERED: June 12, 2015