

# NUMBER 13-20-00004-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

REGINA KAY SMITH AND JEFFREY SCOTT
GROVE, AS SURVIVING PARENTS OF
BRITTANY DAWN GROVE,                                    Appellants,

v.

USI INDUSTRIAL SERVICES, INC.,                          Appellee.

## On appeal from the 206th District Court
of Hidalgo County, Texas.

# MEMORANDUM OPINION

### Before Justices Benavides, Longoria, and Tijerina
### Memorandum Opinion by Justice Benavides

By five issues that can be grouped into three, appellants Regina Kay Smith and

Jeffrey Scott Grove, as surviving parents of Brittany Dawn Grove (the Groves), contend

appellee USI Industrial Services, Inc. (USI) was not entitled to summary judgment on the Groves' claims against USI based on (1) respondeat superior and (2) non-employee mission liability.[1] The Groves also argue (3) that the conclusory statements in USI's affidavits could not support summary judgment. We affirm.

## I.   BACKGROUND

The claims out of this case arise from a fatal auto accident. Roberto Rodriguez and Alejandro Ayala were employed as boilermakers for USI. USI had an agreement with Phillips 66 to supply highly specialized workers to its refinery in Borger, Texas, and the company directed Rodriguez and Ayala to travel from the Rio Grande Valley to Borger for the job. Rodriguez and Ayala were dismissed from their employment with USI early in the morning on April 18, 2016, due to a reduction in force. There is no dispute that the termination was to Rodriguez and Ayala's benefit as they were set to begin a new job in Port Lavaca, Texas shortly thereafter. At some point on April 18, Rodriguez and Ayala began their trip home towards the Rio Grande Valley.

Around 2:00 p.m., in Coleman, Texas, Rodriguez, driving Ayala's truck, lost control of the truck and collided with a vehicle driven by Brittany Grove. After the initial collision, the truck was subsequently hit by another vehicle. Rodriguez and Brittany were both killed in the accident. Ayala was injured and taken to the hospital.

On August 27, 2017, the Groves filed the initial lawsuit in this case. They later added USI as a defendant, alleging respondeat superior and non-employee mission liability for Ayala and Rodriguez's negligence and negligence against USI in dispatching,

---

[1] The Groves also initially asserted negligence against USI but have not raised an issue on appeal regarding their negligence claim.

2

selecting, instructing, and overseeing Ayala and Rodriguez.[2] In January 2019, USI filed traditional and no-evidence motions for summary judgment on all the claims the Groves asserted. In its amended motions for summary judgment, USI attached the affidavit of Sherman Smith, Rodriguez and Ayala's supervisor. The Groves responded and sought leave to file an affidavit from Ayala after the deadline. The Groves also filed a partial motion for summary judgment seeking to conclusively establish that Rodirguez was in the course and scope of employment at the time of the accident.

The trial court granted USI's amended motion for summary judgment in its entirety, stating that it "considered . . . the summary judgment evidence presented." This appeal followed.

## II. SUMMARY JUDGMENT

By two issues, the Groves argue that the trial court erred by granting USI's summary judgment on their claims for (1) respondeat superior and (2) non-employee mission liability.

### A. Standard of Review

We review the trial court's grant of summary judgment de novo. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018) (citing *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003)). When both parties move for summary judgment, we review the evidence presented by both sides and "render the judgment the trial court should have rendered." *SeaBright Ins. Co. v. Lopez*, 465 S.W.3d 637, 641–42 (Tex. 2015) (citing *Comm'rs Ct. of Titus Cnty. v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997)).

---

[2] Ayala filed cross-claims against USI that tracked the Groves' claims, but only with respect to Rodriguez, not both he and Rodriguez. His cross-claims are not relevant to this appeal.

We review no-evidence motions for summary judgment under the same legal sufficiency standard as a directed verdict. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). Under this standard, the nonmovant has the burden to produce more than a scintilla of evidence to support each challenged element of its claims. *Id.* A party moving for traditional summary judgment bears the burden of proving that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 257 (Tex. 2017). To be entitled to summary judgment, a defendant must conclusively negate at least one essential element of the cause of action being asserted or conclusively establish each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). Evidence is conclusive only if reasonable people could not differ in their conclusions. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). "If a movant initially establishes a right to summary judgment on the issues expressly presented in the motion, then the burden shifts to the nonmovant to present to the trial court any issues or evidence that would preclude summary judgment." *Bryant v. Baker*, 580 S.W.3d 408, 412 (Tex. App.—Houston [1st Dist.] 2019, pet. denied) (citing *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979)).

In reviewing either type of summary judgment motion, we view the evidence in the light most favorable to the nonmovant, crediting favorable evidence if reasonable jurors could do so, and disregarding contrary evidence unless reasonable jurors could not. *Merriman*, 407 S.W.3d at 248; *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *see Hawthorne v. Guenther*, 461 S.W.3d 218, 221 (Tex. App.—San Antonio

4

2015, pet. denied). If the trial court grants summary judgment without specifying the grounds for granting the motion, then we must uphold the trial court's judgment if any of the asserted grounds are meritorious. *Davis v. West*, 433 S.W.3d 101, 109 (Tex. App.—Houston [1st Dist.] 2004, pet. denied).

**B.    Applicable Law**

Under the common law doctrine of respondeat superior, or vicarious liability, "liability for one person's fault may be imputed to another who is himself entirely without fault solely because of the relationship between them." *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 540 (Tex. 2002) (plurality op.) (citation omitted). "Respondeat superior thus constitutes an exception to the general rule that a person has no duty to control another's conduct." *Painter v. Ameritex Drilling I, Ltd.*, 561 S.W.3d 125, 131 (Tex. 2018).

The Texas Supreme Court has "long recognized the employer-employee relationship as one implicating the doctrine's risk-shifting policies." *Id.* "An employer may be held liable for the tortious acts of an employee if the acts are within the course and scope of employment." *Arbelaez v. Just Brakes Corp.*, 149 S.W.3d 717, 720 (Tex. App.—Austin 2004, no pet.). "[T]o prove an employer's vicarious liability for a worker's negligence, the plaintiff must show that, at the time of the negligent conduct, the worker was (1) an employee and (2) was acting in the course and scope of his employment." *Painter*, 561 S.W.3d at 131. "The employment status inquiry involved in step one depends on whether the employer has the overall right to control the progress, details, and methods of operations of the work, whether or not it chooses to exercise that right as to a particular task." *Id.* "If the employer has a sufficient right of control to give rise to the

5

employer-employee relationship, step two of the analysis comes into play because that right extends to the employee's acts within the course and scope of his employment." *Id.*; *Arbelaez*, 149 S.W.3d at 720.

"Course and scope of employment means an activity of any kind or character that has to do with and originates in the work, business, trade, or profession of the employer and that is performed by an employee while engaged in or about the furtherance of the affairs or business of the employer." TEX. LAB. CODE ANN. § 401.011(12). Determining whether an employee was acting within the course and scope of employment is generally a fact issue. *Arbelaez*, 149 S.W.3d at 720. For an employee's conduct to be within the course and scope of employment, the conduct must be: (1) within the general authority given to the employee; (2) in furtherance of the employer's business; and (3) to accomplish the object for which the employee was hired. *Id.* "The employee must be acting with the employer's authority and for the employer's benefit." *Painter*, 561 S.W.3d at 138–39. The "primary test for determining whether an employee is acting within the course and scope of employment is whether the employer had the right to direct and control the employee's performance at the time of the alleged negligent act." *Arbelaez*, 149 S.W.3d at 720.

When an employee is involved in an accident while driving a motor vehicle, there are special rules to determine whether the employee was within the scope of employment at the time of the accident. *See Painter*, 561 S.W.3d at 135–37; *see also Clanton v. Interstate Telecomms., Inc.*, No. 13-19-00107-CV, 2020 WL 1887759, *5 (Tex. App.— Corpus Christi–Edinburg Apr. 16, 2020, no pet.) (mem. op.). An employee is not generally

6

in the course and scope of employment when he is driving a vehicle to and from the employee's place of work. *Painter*, 561 S.W.3d at 136.

## C.     Discussion

The Groves argue that a genuine issue of material fact exists as to whether (1) Rodriguez was USI's employee after he left the Phillips 66 refinery and (2) acting within the course and scope of his employment, and if not, whether USI was still liable for his negligence as a non-employee because (3) Rodriguez was subject to USI's direction or control and (4) Rodriguez's return trip benefited USI. Finally, the Groves contend (5) that the trial court abused its discretion and committed error by considering conclusory testimony in support of USI's summary judgment.[3] All the Groves' issues can be grouped under determining if summary judgment was proper under the theories of either respondeat superior or non-employee mission liability.

### 1.     Respondeat Superior

To prevail on appeal, the Groves must first raise a genuine issue of material fact as to whether Rodriguez was an employee of USI at the time of the accident. *See id.* at 131. Because they fail on this first step, we need not address whether Rodriguez was in the course and scope of his employment. *See* TEX. R. APP. P. 47.1.

Although the Groves argue that Rodriguez should have been considered USI's employee because he was given an allowance for his travel from the Rio Grande Valley to Borger and back, they cannot overcome the undisputed fact that Rodriguez was

---

[3] In its order, the trial court indicated that it "considered by submission the Motions, timely filed Responses and Replies, . . . the summary judgment evidence presented, Motions for Leave, Motion to Strike, responses thereto, and cited case law" in granting USI's motion for summary judgment.

terminated from his employment with USI on the morning of the accident. Deposition testimony and evidence presented to the trial court from Smith, a supervisor in Borger for USI, confirmed that both Rodriguez and Ayala were terminated on the morning of April 18, 2016, around 8:00 a.m., due to a "reduction in force." Smith testified that both men clocked out according to the gate time-keeping system around 8:20 a.m. and were no longer considered employed by USI. Smith also explained that the men were paid a lump sum mileage amount for travel based on the distance determined by Google Maps between the Rio Grande Valley and Borger. He stated that USI does not give any instructions regarding the "manner of travel" to workers once they leave the refinery. Evidence showed that the men went to pack up their belongings and stopped for a meal before leaving for the Rio Grande Valley on April 18, 2016. The accident that claimed the lives of Brittany and Rodriguez occurred much later in the day, around 3:00 p.m. Although Rodriguez and Ayala were traveling home from a work site, they had been released from their employment, and the Groves failed to raise a fact issue that the men were employees of USI at the time of the accident. *See id.*

The cases the Groves rely on in their brief are all distinguishable from the facts of this case. Those cases all involved employees driving to and from a work site after a shift that were *still employed* by their respective companies. *See Arbelaez*, 149 S.W.3d at 720; *Tex. Emps.' Ins. Ass'n v. Inge*, 208 S.W.2d 867, 870 (Tex. 1948); *see also Clanton*, 2020 WL 1887759 at *5. None of the cases cited by the Groves involved employees who had been terminated prior to the accidents in question. The Groves cite *SeaBright Insurance Co.*, which we agree relates most closely to the facts here in that Rodriguez and Ayala

8

undertook to work in Borger. *See* 465 S.W.3d at 644–45. However, again, the employee in *SeaBright* was still employed by the company at the time of his death. *Id.* at 645 (noting the undisputed fact that plaintiff was driving "to his place of employment" when he died). We overrule the Groves' first issue.

### 2. Non-Employee Mission Liablity

The Groves also argue that if Rodriguez was considered to be a non-employee, as we have determined, then non-employee mission liability applies.

Non-employee mission liability imposes vicarious liability similar to respondeat superior, but outside the employment context. It requires proof the mission was conducted: (1) subject to the employer's direction or control; and (2) for the employer's benefit. *Arvizu v. Estate of Puckett*, 364 S.W.3d 273, 275 n.3 (Tex. 2012); *St. Joseph Hosp.*, 94 S.W.3d at 557.

The Groves argue that "[f]act issues remain as to USI's control over Rodriguez's travel and employment, as well as to whether it received a benefit from that travel." We disagree. The deposition testimony from Smith explained how the travel allowance was determined. He stated that USI utilized Google Maps to determine the mileage between the employee's location and Borger. The employee was paid an amount per mile based on that calculation, regardless of whether they actually took the route or not.

The Groves concede in their brief that "USI did not control the specific route Rodriguez chose" or "specifically tell Rodriguez . . . how to drive." We have previously found that merely compensating an employee for mileage without directing or controlling their means of travel or the particular route taken does not place the employee in the

9

course and scope of employment while traveling to and from work. *Wilson v. H.E. Butt Grocery, Co.*, 758 S.W.2d 904, 907–08 (Tex. App.—Corpus Christi–Edinburg 1988, no writ); *see London v. Tex. Power & Light Co.*, 620 S.W.2d 718, 720 (Tex. App.—Dallas 1981, no writ). We see no reason to deviate from that rule here when, like in *Wilson*, the Groves' claim turns on USI's "right or power to direct and control" Rodriguez. *See Wilson*, 758 S.W.2d at 907; *Arvizu*, 364 S.W.3d at 275 n.3.

Moreover, Ayala testified that once they were released from their employment with USI, the two men decided to return to the Rio Grande Valley for a few days before starting a new job. Yet, they could have elected to drive directly to their next job site in Port Lavaca, Texas, if they preferred, and USI, based on the predetermined mileage allowance, would have been obligated to reimburse them all the same. In other words, USI did not instruct them to return directly home. Because we determine that the trip was not under USI's control, we do not need to determine if it was for USI's benefit. *See Arvizu*, 364 S.W.3d at 275 n.3. We overrule the Groves' second issue.

### III.   AFFIDAVIT EVIDENCE

By a third issue, the Groves argue that Smith's affidavit contains unsupported conclusory statements that cannot support summary judgment. USI argues that we should not consider any part of Ayala's affidavit because it was not timely filed and there was no good cause for the delay in filing.

Under our prior decisions, a written order is not necessary when the record indicates that the trial court ruled, either expressly or implicitly, on an evidentiary objection. *See Columbia Rio Grande Reg'l Hosp. v. Stover*, 17 S.W.3d 387, 395–96 (Tex.

10

App.—Corpus Christi–Edinburg 2000, no pet.) (citing TEX. R. APP. P. 33.1(a)(2)(A)). Evidentiary rulings are reviewed for abuse of discretion. *Starwood Mgmt., LLC v. Swaim*, 530 S.W.3d 673, 678 (Tex. 2017).

Affidavits to support summary judgment must be clear, positive, direct, credible, free from contradictions, and susceptible to being readily controverted. *See* TEX. R. CIV. P. 166a. A conclusory statement is one that does not provide underlying facts to support a conclusion. *See Pipkin v. Kroger Tex., L.P.*, 383 S.W.3d 655, 669–70 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). The Groves argue that Smith's affidavit was conclusory because he did not explain how he knew for certain that USI did not have the right to control Rodriguez or how USI did not receive a benefit from the return trip home.

However, our disposition turns on two undisputed facts: Rodriguez and Ayala were released from their employment before their trip home, and USI did not control the manner of travel or the route taken. We have not considered whether USI received a benefit from the return trip. Thus, any alleged error would be harmless. *See* TEX. R. APP. P. 44.1(a)(1). We overrule the Groves' third issue.

### IV. CONCLUSION

We affirm the trial court's judgment.

GINA M. BENAVIDES
Justice

Delivered and filed on the
18th day of November, 2021.