COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| DUANE L. COOK, | § | No. 08-22-00111-CV |
| Appellant, | § | Appeal from the |
| v. | § | 143rd Judicial District Court |
| TEXAS MUTUAL INSURANCE COMPANY, | § | of Ward County, Texas |
| | § | (TC# 20-08-25542-CVW) |
| Appellee. | | |

## **O P I N I O N**

Appellant Duane L. Cook was injured while driving a vehicle belonging to his employer and sought workers' compensation coverage. Appellee Texas Mutual Insurance Company (Texas Mutual), Cook's employer's insurance carrier, contested the coverage in a hearing before an administrative law judge who found that Cook suffered a compensable injury and had a resulting disability. Texas Mutual appealed to a Texas Department of Insurance-Division of Workers' Compensation (DWC) appeals panel, which rendered judgment in its favor. Cook then filed this lawsuit in the trial court to overturn the panel's decision, and Texas Mutual moved for summary judgment. The trial court granted Texas Mutual's summary-judgment motion. Cook now appeals the trial court's grant of summary judgment in two issues, arguing that the court erred because (1) Cook was in the course and scope of his duties when he was injured, and (2) Cook had a

disability as defined by the Texas Labor Code. For the following reasons, we reverse and remand the case to the trial court for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

At the time he was injured, Cook was employed as a mechanic with Doc's Reverse Units (Doc's), an oilfield fishing and rental tools company located in Monahans, Texas. Doc's issued Cook a company-owned truck, to include work tools, for trips to and from Doc's yard and other job sites as part of his employment. While Doc's allowed Cook to drive the truck to and from his home and Doc's shop, Cook was not allowed to use the truck for personal errands and was required to comply with company policies while driving the truck. As Doc's sole mechanic employee, Cook was responsible for checking equipment and ensuring it was in good working order at Doc's yard prior to crews taking it out to worksites from there, and Cook also checked equipment at various remote worksites. Cook was expected to go in at various times, both during and outside regular business hours. Both Cook and Doc's managers described that in this business, time is of the essence—the equipment must be checked and in good order both at the worksites and at Doc's yard prior to deploying to the sites; the equipment could not arrive earlier or later than ordered, otherwise, the client might not have the appropriate staff on site to receive the equipment and procure it from elsewhere.

On the night of January 5, 2020, one of Cook's supervisors ordered him to drive out the next morning to Doc's yard to inspect some equipment that was to be used later that day. The equipment was to leave the yard at a time certain in the morning so as to arrive on site at the designated delivery time. At approximately 5:00 a.m. on January 6, 2020, Cook began driving the company truck from his house in Grandfalls, Texas, to the yard at Doc's. After traveling one or two blocks from his house, Cook was involved in a motor-vehicle collision when he rear-ended a

semi-truck, which resulted in Cook suffering multiple injuries, including fractures to his vertebrae, face, ribs, and right hand.

After Cook was injured, the treating physician ordered Cook to be off of work from the time of the injury to at least the end of January 2020. Cook filed a claim under Chapter 410 of the Texas Workers' Compensation Act, and Texas Mutual contested Cook's claim. An administrative law judge (ALJ) held a contested hearing to determine whether Cook sustained a compensable injury and whether he had a continuing disability from the time of the collision to the date of the hearing. The ALJ found in Cook's favor. A DWC appeals panel reversed the ALJ's judgment and rendered a decision against Cook, finding that Cook was not acting in the course and scope of his employment when he was injured.

Cook subsequently filed suit in the trial court, arguing that the appeals panel had erred by reversing the ALJ's decision and that he suffered a compensable injury and was thus entitled to damages and benefits under the Texas Labor Code. Texas Mutual responded by filing a combined traditional and no-evidence motion for summary judgment, arguing that, inter alia, (1) Cook was not within the course and scope of his employment when he was injured, and (2) Cook had presented no evidence that he had a disability as a result of a compensable injury. Following a hearing on Texas Mutual's motion, the trial court entered a written order granting summary judgment in Texas Mutual's favor.

This appeal followed. Cook now raises two issues challenging the trial court's grant of summary judgment, arguing that the court erred by finding that (1) Cook was not acting within the course and scope of his employment when he was injured and (2) he did not suffer a disability under the Texas Labor Code.

## II. DISCUSSION

### A. Standard of review

We review a trial court's grant or denial of summary judgment de novo. *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 680 (Tex. 2017). A party filing a traditional motion for summary judgment is required to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Fibela v. Wood*, 657 S.W.3d 664, 670 (Tex. App.—El Paso 2022, no pet.) (citing TEX. R. CIV. P. 166a(c)). "To prevail as a movant, a defendant must either negate at least one of the essential elements of a cause of action or conclusively establish each element of an affirmative defense." *Id.* (citing *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995)). "Once a movant initially establishes a right to summary judgment on the issues expressly presented in the motion, the burden shifts to the nonmovant to present issues or evidence precluding summary judgment." *Id.* (citing *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979)).

A no-evidence motion for summary judgment is similar to a pretrial motion for directed verdict. *See Draughon v. Johnson*, 631 S.W.3d 81, 88 (Tex. 2021) (*citing* TEX. R. CIV. P. 166a(i)). The motion must state the elements as to which the movant believes there is no evidence. TEX. R. CIV. P. 166a(i). "A properly filed no-evidence motion shifts the burden to the nonmovant to present evidence raising a genuine issue of material fact supporting each element contested in the motion." *JLB Builders, L.L.C. v. Hernandez*, 622 S.W.3d 860, 864 (Tex. 2021). "[A] no-evidence summary judgment is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). "More than a scintilla of evidence exists [if it would allow] reasonable and fair-minded people to differ in their conclusions," while less than a scintilla

exists "when the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact." *King Ranch*, 118 S.W.3d. at 751 (internal quotation marks omitted); *see also Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600–01 (Tex. 2004).

"In reviewing either type of summary judgment motion, we view the evidence in the light most favorable to the nonmovant, crediting favorable evidence if reasonable jurors could do so and disregarding contrary evidence unless reasonable jurors could not." *Fibela*, 657 S.W.3d at 670 (citing *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013)). We must "indulge every reasonable inference in favor of the non-movant and resolve any doubts against the motion." *Cimarex Energy Co. v. Anadarko Petroleum Corp.*, 574 S.W.3d 73, 86 (Tex. App.—El Paso 2019, pet. denied) (citing *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017)). When, as here, a party moves for both traditional and no-evidence summary judgment, we first consider the no-evidence motion. *Ford Motor Co.*, 135 S.W.3d at 600.

**B.  Course-and-scope issue**

Cook argues the court erred by finding that Cook was not acting within the course and scope of his employment when he was injured. We agree.

*1.  Applicable law*

*a.  Workers' Compensation Act-compensable injuries: course and scope*

The Texas Workers' Compensation Act is a "a mechanism by which workers [can] recover from subscribing employers without regard to the workers' own negligence while limiting the employers' exposure to uncertain, possibly high damage awards permitted under the common law." *SeaBright Ins. Co. v. Lopez*, 465 S.W.3d 637, 642 (Tex. 2015). Workers' compensation insurance only compensates employees who sustain "compensable injuries." *Morales v. Liberty Mut. Ins. Co.*, 241 S.W.3d 514, 519 (Tex. 2007) ("The existence of a compensable injury is the

threshold requirement for payment of benefits under the [Texas Workers' Compensation] Act."). Under the Texas Labor Code, "compensable injury" means "an injury that arises out of and in the course and scope of employment for which compensation is payable under this subtitle." TEX. LAB. CODE ANN. § 401.011(10). "Course and scope" is defined as

> an activity of any kind or character that has to do with and originates in the work, business, trade, or profession of the employer and that is performed by an employee while engaged in or about the furtherance of the affairs or business of the employer. The term includes an activity conducted on the premises of the employer or at other locations.

*Id.* § 401.011(12). To that end, the course and scope of employment "require[s] the injury to '(1) relate to or originate in, and (2) occur in the furtherance of[] the employer's business.'" *SeaBright*, 465 S.W.3d at 642 (quoting *Leordeanu v. Am. Protection Ins. Co.*, 330 S.W.3d 239, 241 (Tex. 2010)). "Both the origination and furtherance elements must be satisfied even if an employee qualifies for one of the exceptions to an exclusion[.]" *Id.* at 645.

### b. *Exclusion: coming-and-going rule*

"As a general rule, travel to and from work does not originate in the employer's business and, in some instances, is expressly excluded from the course and scope of employment by statute." *Orozco v. Cnty. of El Paso*, 602 S.W.3d 389, 393 (Tex. 2020). Excluded from the definition of course and scope is "transportation to and from the place of employment." TEX. LAB. CODE ANN. § 401.011(12)(A). Also known as the "coming and going" rule, travel to and from the place of employment was excluded from course and scope because such travel "is in most instances 'suffered as a consequence of risks and hazards to which all members of the traveling public are subject rather than risks and hazards having to do with and originating in the work or business of the employer.'" *Painter v. Amerimex Drilling I, Ltd.*, 632 S.W.3d 156, 160 (Tex. App.—El Paso 2021, no pet.) (quoting *Janak v. Texas Employers' Ins. Assoc.*, 381 S.W.2d 176, 178 (Tex. 1964)).

6

### c. Exceptions to coming-and-going rule

There are several statutory exceptions to the coming-and-going rule, including, as applicable here, where "the transportation is furnished as part of the contract of employment or is paid for by the employer[,]" "the means of the transportation are under the control of the employer[,]" or "the employee is directed in the employee's employment to proceed from one place to another place[.]" TEX. LAB. CODE ANN. § 401.011(12)(A)(i)–(iii). Even so, "[m]eeting the exception requirements . . . does not necessarily mean the course and scope requirements are also met." *Painter*, 632 S.W.3d at 160–61. "The effect of satisfying one of these circumstances does not establish that the travel is in the course and scope of employment; rather, it establishes that such travel is not summarily excluded from being within the course and scope of the employment solely by virtue of the fact that the employee was traveling between home and work." *Am. Home Assur. Co. v. De Los Santos*, No. 04-10-00852-CV, 2012 WL 4096258, at *3 (Tex. App.—San Antonio Sept. 19, 2012, pet. denied) (mem. op.).

### 2. Analysis

Here, Texas Mutual does not contest that Cook was traveling in a vehicle owned and controlled by Doc's at the time he sustained his injuries. Rather, it asserts that those facts are insufficient, by themselves, to establish that Cook was acting within the course and scope of his employment. Texas Mutual argues that for Cook to show that he was acting within the course and scope of his employment, he also had to establish that he was acting in furtherance of Doc's affairs or business when he was injured and not merely driving from his home to his workplace. Texas Mutual thus contends that because Cook was not acting in the course and scope of his employment, the trial court properly granted summary judgment on this matter.

7

### a. Evidence shows exception to coming-and-going exclusion: Doc's furnished Cook with a company vehicle

The undisputed evidence shows that Doc's issued Cook a company-owned vehicle for use on his trips to work sites and that Doc's regularly allowed Cook to drive the truck from his house to work. Cook was not allowed to use the truck for a non-work purpose unless he was given authorization to do so and he would have faced discipline for using the truck for unauthorized business purposes. Moreover, Doc's paid for gas, maintenance, and insurance on the truck, and testimony from Doc's supervisors showed that the company controlled the truck's use and prohibited Cook and other employees from using it for personal errands. Cook was to follow company policies while driving the truck, even on his way from home to work. And one of Doc's managers testified that the truck contained some tools owned by Doc's for use on Doc's equipment. This evidence suggests that driving the truck was an integral part of Cook's employment and was not merely furnished as a gratuitous accommodation to him. *Compare with De Los Santos*, 2012 WL 4096258, at *5 (evidence suggested that an employee was not within the course and scope of his duties while driving a truck due to the lack of evidence showing that an employer furnished a truck to the employee as part of his work contract, which implied that driving the truck was not an integral part of the employee's contract but was rather a gratuitous accommodation) (citing *Texas Gen. Indem. Co. v. Bottom*, 365 S.W.2d 350, 353 (Tex. 1963)).

Thus, although Cook was traveling from his home to work when he was injured, the evidence suggests that his travel could be within the course and scope of his employment because he was driving a vehicle owned and controlled by Doc's that Doc's furnished as part of his employment, and thus he established at least one of the statutory exceptions to the coming-and-going rule. *See* TEX. LAB. CODE ANN. § 401.011(12)(A)(i)–(ii); *see also De Los Santos*, 2012 WL 4096258, at *3 (employee who was driving an employer-owned vehicle from his home to work at

8

the time of an accident was potentially within the course and scope of his employment). Nevertheless, the fact that Doc's owned the truck does not, by itself, establish that Cook was within the course and scope of his employment; Cook's trip must also have originated in and been in furtherance of Doc's business. *See id.*; *see also Painter*, 632 S.W.3d at 160–61 (recognizing that meeting the requirements for an exception to the coming-and-going rule does not necessarily mean that the course-and-scope requirements are also met).

### b. *Course-and-scope prong one: Cook's travel originated in Doc's business*

Regarding origination, "[a]n employee's travel to and from work . . . cannot ordinarily be said to originate in the [employer's] business . . . because '[t]he risks to which employees are exposed while traveling to and from work are shared by society as a whole and do not arise as a result of the work of employers.'" *Seabright*, 465 S.W.3d at 642 (quoting *Leordeanu*, 330 S.W.3d at 242). "However, a distinction can be made if 'the relationship between the travel and the employment is so close that it can fairly be said that the injury had to do with and originated in the work, business, trade or profession of the employer.'" *Id.* (quoting *Shelton v. Standard Ins. Co.*, 389 S.W.2d 290, 292 (Tex. 1965)). This element is established "if the employee's travel 'was pursuant to express or implied conditions of his employment contract.'" *Id.* (quoting *Meyer v. W. Fire Ins. Co.*, 425 S.W.2d 628, 629 (Tex. 1968)).

To determine the existence of origination, courts employ a fact-intensive analysis and consider "the nature of the employee's job, the circumstances of the travel, and any other relevant facts." *Id.* (citations omitted).

> The [Texas Supreme] Court has noted several factors that reflect on whether an employee's travel originates in the employer's business or work, including: (1) whether the employment contract expressly or impliedly required the travel involved; (2) whether the employer furnished the transportation; (3) whether the employee was traveling on a special mission for the employer; and (4) whether the

9

travel was at the direction of the employer, such as requiring the employee to bring tools or other employees to work or another location."

*Fuentes v. Texas Mutual Ins. Co.*, No. 04-16-00662-CV, 2018 WL 1935581, at *4 (Tex. App.—San Antonio Apr. 25, 2018, pet. denied) (mem. op.) (quoting *SeaBright*, 465 S.W.3d at 647 (Johnson, J., dissenting)).

As set forth above, it is uncontested that Doc's owned and controlled the truck Cook was driving when he was injured. In addition, the evidence showed that Cook was Doc's only mechanic at the time he was injured and that his duties included performing checks on equipment that would be used at different work sites. Cook testified that on the day he was injured, he left his house at 5:00 a.m., an earlier time than usual, because one of his supervisors ordered him to drive out to Doc's yard to ensure the proper operation of equipment that was to be sent to a remote work site and used later that day. Regarding his time of employment, Cook testified that although Doc's employees were normally not paid until 8:00 a.m., he "would get paid sometimes from leaving from the house going to a job or leaving the house [and] going to the shop if it was days that [he] wasn't supposed to be there early." Cook "would write down the times that [he] would leave and come back, and [Doc's] would pay [him] accordingly." Cook testified that "[his] job started when [he] left [his] house." And as set forth above, Cook was expected to go to where he was summoned when he was summoned given that he was the only mechanic employee, and the truck contained tools owned by Doc's that Cook would use while working on Doc's equipment.

Based on the above evidence, indulging every reasonable inference in Cook's favor as the non-movant and resolving any doubts in his favor, the evidence suggests that Cook's travel at the time he was injured was sufficiently related to his employment at Doc's and that his trip originated in his work-related duties at the company. We thus conclude that there is a genuine issue of

material fact on the issue of origination that precludes summary judgment, and the trial court erred by granting summary judgment in Texas Mutual's favor on this basis.[1]

### c. Course-and-scope prong two: Cook's trip furthered Doc's business

On appeal, Texas Mutual does not argue that Cook's trip did not further Doc's business. Even so, the Texas Supreme Court has repeatedly recognized that "[an] employee's travel to and from work makes employment possible and thus furthers the employer's business." *SeaBright*, 465 S.W.3d at 644 (quoting *Leordeanu*, 330 S.W.3d at 242). Because the uncontested evidence shows that Cook was traveling from his house to Doc's yard when he was injured, Cook has met his burden to raise a genuine issue of fact as to the furtherance element of the course-and-scope standard. *See id.* (holding that undisputed evidence that an employee traveling to his employer's work site when he died conclusively established the furtherance element).

### 3. Conclusion

In sum, Cook has raised a genuine issue of fact as to the course-and-scope requirement for a compensable injury as to both the origination of his trip and that his trip furthered Doc's business. He also showed an exception to the coming-and-going exclusion. For these reasons, the trial court erred by granting summary judgment on this ground.

Accordingly, we sustain Cook's first issue.

---

[1] *See De Los Santos*, 2012 WL 4096258, at *6 (genuine issue of material fact on origination existed where the evidence showed "(1) [the employee] worked on a gas lease located on a large piece of fenced ranchland; (2) [he] did not have an office or central location as a fixed place of employment; (3) [he] spent a significant period of his work time traveling to wells and job sites within the ranch; (4) at the time of the accident [he] was traveling from his home in Orange Grove, Texas to the ranch, which was located [in a different locality]; (5) at the time of the accident [he] was driving a truck owned by his employer; (6) the truck was furnished as part of [his] employment contract and was not for personal use; and (7) the employer paid for work-related fuel expenses.").

## C. Disability Issue

Texas Mutual also moved for no-evidence summary judgment on the ground that there was no evidence Cook had suffered a disability under the Texas Labor Code, and the trial court granted the motion on that basis. Texas Mutual argued that because there was no evidence Cook suffered his injuries while acting within the course of scope of his employment, he failed to put forth evidence raising a genuine issue of material fact that he suffered a disability, which is defined under the Labor Code as a "compensable injury." *See* TEX. LAB. CODE ANN. § 401.011(16) (defining "disability" as "the inability because of a compensable injury to obtain and retain employment at wages equivalent to the preinjury wage."). In other words, because Cook's injures are not compensable if they were suffered while he was not within the course and scope of his employment, Texas Mutual contends that there is no evidence that he suffered a disability under the Labor Code.

But as we hold above, there is a fact issue regarding whether Cook suffered his injuries while he was within the course and scope of his employment at Doc's, thus undercutting Texas Mutual's argument that because Cook was not within the course and scope of his employment when he was injured, he could not have suffered a "compensable injury" or a disability under § 401.011(16). And on the issue of disability, Cook presented medical records showing that he suffered multiple injuries from the collision, including fractures to his vertebrae, face, ribs, and right hand, and that he had trouble breathing through his nose, which caused sleep disturbances. The physician treating Cook ordered him to take off work from the time of the injury to at least the end of January 2020. Cook testified that as a result of his injuries, he was unable to keep his job at Doc's because he experienced severe pain as a result of his injuries, and in March 2020, he

was forced to stop working as a mechanic at Doc's because he could not keep up with the pace of the job.

Because the record contains more than a scintilla of evidence that Cook suffered a disability under § 401.011(16), the trial court erred by granting Texas Mutual's no-evidence motion for summary judgment on this ground. *See* TEX. R. CIV. P. 166a(i); *see also Truck Ins. Exchange v. Smetak*, 102 S.W.3d 851, 857 (Tex. App.—Dallas 2003, no pet.) (the employee's testimony that he experienced pain and missed work due to the injury was some evidence supporting jury's finding of an employee's disability under § 401.011(16)).

Accordingly, we sustain Cook's second issue.

## III. CONCLUSION

We reverse the trial court's order granting Texas Mutual's motion for summary judgment and remand the case to the trial court for further proceedings consistent with this opinion.

LISA J. SOTO, Justice

April 12, 2023

Before Rodriguez, C.J., Palafox, and Soto, JJ.

13